The judgment of the court was pronounced by
Slidell, J.
The plaintiffs s.ued the defendants on a note drawn by F. Dugué. to the order of and endorsed by Fr Dugué, jr. This note bears the endorsement of E. Soniat and of the Citizens’ Bank, by which it was transferred in pledge, before maturity, to the Louisiana State Bank. It was protested on the 15th March, 1843, at the request of the.last named bank, the then holder, who duly notified the endorsers. It remained in the hands of the same holder until September, 1846, when the Citizens’ Bank paid its amount to the Louisiana State Bank.
The defence turns upon the question, whether .the maker and endorser have been discharged by the acts of the Louisiana State Bank. When the discharge was pleaded, the plaintiffs made the Louisiana State Bank a party, and claimed judgment against that bank in the ev.ent of the defence being sustained. The result of the trial in the court below was a judgment in favor of the defendants, and a further judgment in favor of the plaintiffs, against the Louisiana State Bank. •
*13 The material facts are as follows. In May, 1843, F. Dugué executed in favor of various creditors, among whom was the Louisiana State Bank and F. Dugué, jr., (the latter being the endorser of this and many other notes, and the maker of others,) a mortgage, by notarial act, upon a large amount, of lands and slaves. The act contains an agreement between the mortgagor and his creditors to the following effect. He was, within three months, to sell the mortgaged property either at public or private sale, on terms of one tenth cash, and the balance at a credit of one, two, three, and four years, secured by mortgaged notes with endorsers. The proceeds of the sale were to be applied to the payment of the creditors named in the act, their existing liens, however, being perserved and respected in the distribution. The defendants were not to be sued until the sale was fully effected, and the deficit uncovered by the proceeds of sale ascertained. The defendants were to remain liable for this deficit to the extent only, however, in which they were respectively drawers and endorsers. The president of the Union Bank, one of the creditors, was authorized to give releases of the mortgage in order to complete the sales as they should be effected; and the cash and notes received from them were to remain deposited with the notary until a distribution among the beneficiaries was made. After a number of the creditors had signed the act, it was found that the Louisiana State Bank declined to sign it, without an intervention of the Citizens’ Bank. A clause was accordingly added, in which that bank, through Hullin, its president, recites, that it intervenes for the reason that one of the notes held by the Louisiana State Bank, (the note in question in this cause,) had been transferred to the latter bank by the former, which still remained a guarantor of the note. It was further recited that the note was secured by a mortgage given in favor of Soniat, the first endorsee, by the maker, and as the Louisiana State Bank had refused its concurrence without the intervention of the Citizens’ Bank, that therefore, in order to obtain that concurrence for the Messrs. Dugué, the Citizens’ Bank consents to the act: mais cependant en réservant formellement á la Banque des Citoyens tous ses droits d’hypothéque ou de privilege qu’elle peut avoir pour le capital et les intéréts du sus-dit billet hypothécaire, sans y déroger en rien. Et de plus on reservant el la banque son recours plein et entiere contre l’endosseur du dit billet de deux mille quatre cent trente piastres, Mr. F. Dugué, jeme, sans qu’il puisse se prévaloir de cet acte pour réclamer aucun benefice de discussion ni aucun délsii, et avec sa stipulation que le dit endosseur restera personellement obligé comme si le present acte n’avait pas eu lieu. Le dit sieur F. Dugué, jeme, ici present consent formellement a cette clause etreeonnaitdemeurer obligé par son endossement comme si cet acte n’avait pas lieu. After this follows the officiid signatures of Hullin and that of Dugué, jr. It is proper here to observe, that the note of $2,430 above mentioned, was a note also held by the Louisiana State Bank, and described in the act. F. Dugué was the milker.
Following the signatures of Hullin and Dugué, jr., is a clause signed by the president of the Louisiana State Bank, in which he declares that the several claims of that bank are properly recited in the act, and that, inasmuch as the Citizens’ Bank remains guarantor towards the Louisiana State Bank, and the endorser remains bound, as previously expressed in the act, and that there is no change of the mortgage rights, he, in the name of the State Bank, consents to the act.
Before proceeding to state what subsequently occurred, it is proper to pause here, and ascertain the respective rights and obligations of the parties, as they existed immediately after the execution of this instrument.
*14 Its legal effect was not to discharge the personal liability of the maker or endorsers of the note, but simply to estop a personal pursuit of those parties, until the contemplated sale of the mortgaged property should be effected, according to the stipulations of the act, and the deficit ascertained. For that deficit the personal liability remained unimpaired. For that deficit eventual the Citizens’ Bank also remained responsible.
It has been suggested in argument by the counsel of the Louisiana State Bank, that a discharge of the personal liability of Mr. Dugué, jr., upon this note is to be deduced by implication from this stipulation between him and the Citizens’ Bank, respecting the other note of $2,430. Nemo facile presumitur donare. Hullin expressly states that he had taken cognizance of the antecedent portion of the act. It was there expressly stipulated that the personal liabitit.y of the Dugués should remain. But it had also been stipulated that they should not be pursued personally for any of the debts enumerated in the act, until a sale was effected and the deficit ascertained. The Citizens’ Bank was endorser of the note of $2,430. It did not choose to assent, in favor of F. Dugué, jr., its prior endorser, to any delay whatever as to that note. It was willing, however, to assent to the arrangement for delay as regards the other note; although with a formal and cautious, but perhaps unnecessary, reservation of the then existing mortgage rights. To infer, from the partial refusal to accede to a delay with regard to one debt, an abandonment of the personal liability which the debtor himself, in the same instrument, had expressly stipulated as to another debt, would be a forced and unreasonable presumption, which we cannot recognize.
It remains then to consider the circumstances which occurred subsequent to the act of May 3, 1843, and their legal consequences.
In 1845 Mr. Dugué, the elder, addressed a new proposition, in writing, to his creditors. After stating his ineffectual efforts to effect sales of the mortgaged property within the prescribed term, he proposed to make, in their favor, a final abandonment both of the mortgaged property and of other property not embraced in the act of 1843, provided they would give him a full discharge, and also pay some small charges for taxes, &c. At the foot of this proposition a number of the creditors signed a conditional acceptance, and the document was then transmitted to the Louisiana State Bank. The result was a written agreement signed by the presidents of the Louisiana State Bank, the City Bank, the Bank of Louisiana, and the Carrollton Rail Road Company, agreeing that the mortgaged property and also the new property embraced in the proposition should be sold at public auction on certain terms. This agreement, under the circumstances, would probably have implied, per se, a consent to discharge Dugué upon his fulfillment of the terms proposed. But all doubt on this subject is dissipated by what subsequently occurred. All the property was exposed for sale, as had been agreed, in December, 1845. In February, 1846, the president of the Louisiana State Bank, under resolution of the Board, released the mortgage of 1843, in order to complete the title to purchasers. On the 2d December, 1846, the same bank and other creditors effected, by notarial act, a partition of the fund realized from the sale, acknowledged that Dugué had fully performed his contract, and granted, in his favor, a full release for all debts and liabilities which they held against him. Attached to this act was a statement of the debts due to the respective creditors. The Louisiana State Bank was classed in this distribution as a creditor for the other claims, which at the time *15 of the mortgage it held against Dugué, exclusive of the note in question. The Citizens’ Bank was requested to receive the dividend on this note, but declined to do so or to sign the release. It further appears, that on the 6th September, „ , . . , , . 1846, after the new proposition by JJugue, its acceptance by the creditors, the sale of the property pursuant to the new agreement, and the other acts on the part of the Louisiana State Bank, above mentioned, the Citizens’ Bank paid the note in question to the Louisiana State Bank. There is nothing to show that the Citizens’ Bank, when it made this payment; had any notice of, or any participation in, any of these proceedings subsequent to the act of 1843.
From these facts it clearly results, that the Louisiana State Bank had, by its own acts, lost all personal recourse against the maker of the note, and was estopped from looking to anything but the proceeds of the property abandoned to the creditors. When, therefore, on the 6th September, 1846, it received payment of the note from the Citizens’ Bank, its endorser, it received what the Citizens’ Bank was not bound to pay, and paid in ignorance of its discharge from liability by the discharge of the debtor primarily liable. The money paid can, therefore, be recovered back. This is the doctrine of our code, of the commercial law, and of natural justice. “He who receives what is not due him, whether he receives it through error, or knowingly, obliges himself to restore it to him from whom he has unduly received it.” “He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.” Civil Code, 2289, 2280. Chitty on Bills, [*458]. Oakey v. Bank of Louisiana, 17 L. R. 386. McCall v. Corning, 3 Ann. 413.
The judgment of the district court is therefore affirmed, with costs.